*wcase paid*

ORIGINAL

ANDRE S. WOOTEN        3887
ATTORNEY AT LAW
1188 BISHOP STREET
CENTURY SQUARE, SUITE 1909
HONOLULU, HAWAII      96813
TELEPHONE NO: 808-545-4165

DAPHNE E. BARBEE 2911
ATTORNEY AT LAW
1188 BISHOP 1908
HONOLULU, HI 96813
TELEPHONE: 808-533-0275
EMAIL: daphnebarbee@gmail.com

ATTORNEYS FOR PLAINTIFF
PATRICIA CAMPBELL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 19 2013

at____9____o'clock and ___22__min.___P__ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA P. CAMPBELL, ) | CIVIL NO. CV 13 00083 LEK RLP |
| ) | |
| Plaintiff, ) | COMPLAINT; DEMAND FOR JURY |
| ) | TRIAL; SUMMONS |
| vs. ) | |
| ) | |
| STATE OF HAWAII DEPARTMENT OF ) | |
| EDUCATION; PATRICIA HAMAMOTO, ) | |
| Superintendent of Public ) | |
| Schools; BRUCE ANDERSON, ) | |
| Complex Area Superintendent; ) | |
| JULIE LINDBERG, Personnel ) | |
| Regional Officer; SUSAN ) | |
| SCOFIELD, Principal of King ) | |
| Kekaulike High School; ) | |
| ANTHONY JONES, Vice Principal ) | |
| of King Kekaulike High School;) | |
| CURTIS SAIKI, Athletic ) | |
| Director of Principal of King ) | |
| Kekaulike High School ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT**

-1-

The Plaintiff, PATRICIA P. CAMPBELL, by and through her attorney of record, Andre S. Wooten, hereby files this Complaint.

### PARTIES

1.    The Plaintiff, PATRICIA P. CAMPBELL, is and was at all times relevant since the year 2000, employed as a music teacher by Defendant State of Hawaii Department of Education. She is a Caucasian female who Complains herein of violation of her civil rights by her employer.  She was at all times relevant a resident of the City and County of Maui, in the State of Hawaii.

2.    Defendant State of Hawaii Department of Education ["D.O.E."] is and was at all times relevant a governmental agency incorporated by the State of Hawaii, responsible for hiring, training, supervising, promoting, and disciplining employees of the D.O.E. and setting policy for the D.O.E. It administers all the public schools up to and including the secondary level in the State of Hawaii. It is sued in its official capacity.

3.    Defendant Patricia Hamamoto was at all times relevant the Superintendent of schools under the administration of Defendant D.O.E. As such, she was responsible for the administration of and setting policy for all schools under Defendant D.O.E.  She is and was at all times relevant a resident of the City and County of Honolulu, in the State of Hawaii. She is sued in her official capacity.

4.    Defendant BRUCE ANDERSON was at all times relevant the

-2-

Maui Complex Area Superintendent.   He is and was at all times relevant a resident of the City of Kahului and County of Maui, in the State of Hawaii.   He is sued in both his individual and official capacities for acts or omissions personally committed by her.

5.   Defendant JULIE LINDBERG, was at all times relevant the Personnel Regional Officer. She is and was at all times relevant a resident of the City of Kahului and County of Maui, in the State of Hawaii. She is sued in both her individual and official capacities for acts or omissions personally committed by her.

7.   Defendant SUSAN SCOFIELD was at all times relevant the Principal of Maui'S King Kekaulike High School, a school under the administration of Defendant D.O.E. As such, she was responsible for the day to day activities and curriculum of King Kekaulike High School and its staff. She was responsible for enforcing Defendant D.O.E. rules and regulations, and for disciplining both staff and students at King Kekaulike High School. She is and was at all times relevant a resident of the City of Kahului and County of Maui, in the State of Hawaii. She is sued in both her individual and official capacities for acts or omissions personally committed by her.

8.   Defendant, ANTHONY JONES, was the Vice Principal of King Kekaulike High School, who, through acts or omissions, violated or contributed to the violation of the Plaintiff'S civil

rights.    Anthony Jones, an African-American male, as Vice
Principal was responsible for the day to day activities and
curriculum of King Kekaulike High School and its staff.    He was
responsible for enforcing Defendant D.O.E. rules and regulations,
and for disciplining both staff and students at King Kekaulike
High School.    He is and was at all times relevant a resident of
the City of Kahului and County of Maui, in the State of Hawaii.
He is sued in both his individual and official capacities for
acts or omissions personally committed by him.

9.    Defendant, Curtis Saiki was the Athletic Director of
King Kekaulike High School, who, through acts or omissions,
violated or contributed to the violation of the Plaintiff'S civil
rights.    Mr. Saiki, a Japanese male, was responsible for
enforcing Defendant D.O.E. rules and regulations, and for
disciplining both staff and students at King Kekaulike High
School.    He is and was at all times relevant a resident of the
City of Kahului and County of Maui, in the State of Hawaii.    He
is sued in both him individual and official capacities for acts
or omissions personally committed by him.

<u>JURISDICTION</u>

10.  Jurisdiction of this Court is afforded in this case as
matters arising under Federal Civil Rights Laws 42 U.S.C. §§
1981, 1983, 1985, 1986, and Title VII, 42 U.S.C. §§ 2000e, as
well as 42 U.S.C. § 12101, the A.D.A. arise under original

jurisdiction.  The amount in controversy is substantially greater than $75,000.00 pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1).

11.  Violations of Federal Constitution and Civil Rights law confer original jurisdiction upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343(3); and pendant jurisdiction with respect to the causes of action arising under state common law and statutes pursuant to Title 28 U.S.C. and tort.  The jurisdiction of this Court is invoked to secure the protection of Civil Rights and to redress deprivation of rights, privileges, and immunities secured by: a) 14th Amendment to the Constitution of the United States, Section 1; b) Commerce Clause, article 1, section 8, clause 3 of the Constitution of the United States; c) Title 2 of the Civil Rights Act of 1964, 78 STAT 243, 42 U.S.C. § 2000(a) at seq. Providing for injunctive relief against discrimination in places of Federally sponsored employment; and d) 42 U.S.C. § 1981, and Title IX, 42 U.S.C. § 12101, the A.D.A., providing for the equal rights of citizens and all persons within the jurisdiction of the United States.

<u>STATEMENT OF FACTS</u>

12.  The Plaintiff became employed as a certified teacher by the Hawaii State Department of Education, Defendant D.O.E., in August of 2000.

13.  The Plaintiff was working as a full time choir and music teacher at Maui High School in 2003, when a male High

school Student, K. M., who has a Japanese surname, threatened her to her face when she told him to put away some playing cards, and he told her he was going to "hurt her real bad.".   Then he broke the door on his way out.

14.   Pursuant to D.O.E. policy she reported this threat to the school resource officer and principal Randy Yamanuha, both of whom told her that if she reported the threat she would lose her job.

15.   Soon thereafter Plaintiff Campbell found a journal left on her desk saying "Death to Campbell... death to the community."

16.   Plaintiff filed a police report concerning these two incidents, which appeared related and terrified her.

17.   Subsequently Plaintiff lost her position at Maui High for the 2004 school year, and then she was passed over three times for male teachers for available music teaching positions on Maui, who did not even possess Hawaii teachers certification, which she did.

18.   Therefore, she filed a grievance and in October 2004 she was placed in Haiku elementary school, when that grievance settled.   At Haiku elementary she received a satisfactory evaluation, like she always had previously.

19.   At the end of 2004 Plaintiff Campbell was sent back to teach music at King Kekaulike High School, where she had taught before going to Maui High School.

20.  At the end of the 2006 school year, when the principal, Defendant Scofield did not timely evaluate Plaintiff Campbell, Defendant Scofield gave Plaintiff Campbell a letter accusing her falsely of allegations she was not given the specifics of pertaining to students whose identity she was not informed, and which told her not to talk to anyone at the school about it.

21.  Plaintiff  filed another grievance to learn what she was being accused of and by whom.  After nine months she was informed of the specifics of the allegations, and learned that these students had been in her band class the entire year.

22.  Plaintiff sought counseling for the stress she experienced due to these false allegations and the manner in which the Defendants handled them.

23.  Plaintiff Campbell, was the King Kekaulike Music Director and taught 130 students daily.  The students who filed the initial complaints against her in early 2006, but were unidentified to her incited other students to act up in class and harass the Plaintiff.   So she referred a number of them to the principal and vice principal's office for appropriate discipline, so that she could teach the remaining students in class their music lessons.

24.  On most such occasions the King Kekaulike High School principal and vice principal's office did not inform her that they had done anything about her referrals, which was a form of

gender and racial harassment.

25.   During this time threatening graffiti was scrawled on the walls of Plaintiff Campbell'S music room, which she had to request the janitor to paint over; and lights outside of the band room office were not fixed despite requests for lighting.

26.   The football coach Mr. Saiki, several times allowed or ordered the football teach to charge through the band'S half-time performance.

27.   After she complained about this, the King Kekaulike High School administration allowed coach Saiki to take the band to a football game without the Plaintiff, who was the band director, which was publicly humiliating in the Maui Community for Plaintiff Campbell.

28.   The harassment began at King Kekaulike High School about a week after Mr. Jones came on board as Vice Principal of King Kekaulike High School.   He told Plaintiff "around the second time I ever met him.. that I should  look for another school to teach at... your days are numbered here....."

29.   From then on Defendant Jones refused to support Plaintiff  on many accounts where Plaintiff Campbell wrote referrals.   The referrals were either ignored, the students-counseled and warned, or in many instances, Mr. Jones took the sides of students.   He even pulled students out of Plaintiff Campbell'S class during instruction time and grilled them on what

kind of teacher she was.   The student in one case came back into
class traumatized and told Plaintiff Campbell after class what
happened.

30.   Defendant Jones also failed to make police reports when
students threatened Plaintiff Campbell verbally, including saying
they had a gun.    In all the police reports Plaintiff Campbell
has on file about these threats, none were made by the
administration, who was aware of every incident.   Like the " die
bitch die and death to Campbell" - written in pink paint around
Plaintiff Campbell'S car... and also- "you're dead"  on Plaintiff
Campbell phone in her office.

31.   When the Defendants took the band to the State
Championships without the Director  Plaintiff Campbell was still
teaching full time as Music Director of KKHS. Plaintiff Campbell
was put under investigation in June, returned to school in late
July and filed a Grievance to find out who her accusers were.
She didn't get the names or accusations until the following
March.

32.   The five students who fabricated outrageous accusations
were still in Plaintiff Campbell'S band ALL YEAR and they were
the ring leaders in getting  the band to vote and not  going to
the  championship game.

33.   Under oath, Ms Scofield said the game was on Oahu and
that is why the band didn't go.    That was Not true.    The Game

was to be played on Maui the day after Thanksgiving.

34. Plaintiff Campbell had a meeting with all band members and they took a vote to see if we had enough students to go since it was over Thanksgiving break.   The students had been coerced by these five students  into voting and saying they were all going to be off island so that the band couldn't play. Plaintiff Campbell reported this in writing to Ms. Scofield and told her that the band would not be playing because she didn't have enough students committed to showing up on Oahu to play.

35. Plaintiff Campbell was told by Mr. Costales- Carlyns, the drum major'S dad, who is principal of Kalama Middle School : "Ms. Campbell", I was part of the group who went in and took the instruments.   I would NEVER have taken your band if you had been a male band director. I don't know why you weren't told that we were taking the band."

36. Mr. Henderson laughed at Plaintiff Campbell when she came back after her doctor took her out of the school on stress leave for one week.   He said, " I was in charge of your band- and they were great without you."

37. Plaintiff learned that only certain band members were called to come and play.   The student G. V., with autism and the best drummer was intentionally omitted.   His mom was furious.   The other band members who were respectful of Plaintiff Campbell and not part of the harassing faction, were

left out too and this made for a huge divisive force in the band
for the rest of the year.

38.  When Plaintiff Campbell came back to school Carlyn
Costales, the drum major said in front of the band, " You came
back after your nervous breakdown?".

39.  Defendants Jones and Scofield gave the band permission
to go to the Championship football game without their band
director, after lying to her and telling her the event was to be
on Oahu instead of right there on Maui, where it actually was
held.

40. Defendant Jones went into Plaintiff'S office without her
being present and took her grade book and planning book and
allowed students to take instruments.  Defendant Jones  gave Mr.
Henderson the permission to be in charge of the band at the game.
This was all done without Plaintiff'S knowledge, after Defendant
Scofield lied to Plaintiff and told her to tell the kids it was
to be on Oahu.     Plaintiff'S doctor wrote her a medical sick
leave notice due to stress for a week after that.

41. Defendant Jones fabricated a summary of conference for a
conference that never took place between Mr. Jones and Ms.
Campbell.   He wrote several emails at 3 am telling Mr. Jones to
come to his office to discuss this imaginary conference.

42.  Since Plaintiff Campbell  was still under
investigation, had made it know that she would never met with

administration unless she had a witness present, preferably her union representative.

43. Defendant Jones approached Plaintiff after school one day and he insisted she come into his office and sign a summary of conference. She told him that she never had any such conference so how could there be a summary? Then Defendant Jones, in the presence of Mr. Carosso, yelled right in Plaintiff'S face telling her to " stop being on the rag.. and stop ragging on people....." He then followed Plaintiff out of the room screaming at her " you will regret this Campbell.."

44. Plaintiff Campbell went directly to Mr. O'Conner'S room- the art teacher and union representatives class room and called the police there because she was terrified. Defendant Jones intercepted the police officer and Mr. O'Connor had to go and get the officer and told the officer that the victim who called him in the first place was in his room.

45. The officer told Mr. O'Conner that Defendant Jones had told him that Ms. Campbell " has emotional problems...." Mr. O'Conner has submitted this in prior testimony.

46. Plaintiff Campbell ended up having to file a second police report with Defendant Jones named as the suspected harassor; and the female police officer advised Plaintiff Campbell to obtain a restraining order for her personal safety and to prevent further threats and harassment.

47. Plaintiff Campbell was under investigation for verbal and physical abuse of students for an entire year while Plaintiff Campbell was still in the classroom with the students who fabricated all the stories.

48. Defendant Jones also harassed Plaintiff Campbell when he told a parent that Plaintiff Campbell had " kicked a student". Plaintiff Campbell found this out later. But Plaintiff Campbell was never told that she was now being accused of kicking a student.

49. Defendant Curtis Saiki was the Athletic Director when Plaintiff Campbell was the Band Director. Defendant Saiki repeatedly undermined Plaintiff Campbell'S band program.

50. Defendant Saiki changed the seating for the band from out of the stadium forcing the band to move to the far end of the end-zone of the field and it took a huge parent uproar to get us to be able to get back in the stands.

51. During one halftime show, the band was finishing and Defendant Saiki instructed the entire football team to go running onto to the field crashing into the band, putting Plaintiff Campbell'S students in harms way .

52. The other male band directors on the island who saw this told Plaintiff she should pack up the band and leave the game. Plaintiff Campbell didn't dare.

53.   Defendant Saiki was part of the group with Defendant
Jones, Mr. Henderson, Mr. Costales and Defendant Scofield who
went into Plaintiff Campbell'S band room, and took Plaintiff
Campbell'S band students to the championship game without
Plaintiff Campbell, the Band Director, which was very humiliating
for Plaintiff Campbell and very damaging to the rest of the band
members, including a student with autism who was NOT invited to
play with the band.

54.   When Plaintiff Campbell had the last concert of the
year , Defendant Saiki refused to allow her to get the keys for
the gym so Plaintiff  could set up early for the concert.   When
Plaintiff  was finally let in, she scrambled to get everything
set up, including the sound system that was working then.

55.   When Plaintiff Campbell  came back for the concert, the
custodians informed her that Defendants Saiki and Jones had
tripped the breakers so that Plaintiff Campbell had no sound
system for the concert.    In 30 years of putting on concerts
Plaintiff Campbell have never experienced something like that.
The students were very upset.

56.   Following the concert, Plaintiff Campbell and her class
cleaned up the gym, including putting away all the floor covering
and sweeping of the gym floors.   The next day Defendant Saiki
sent Plaintiff Campbell a harassing email telling her that she
had scratched the floor very deeply and that she would be

responsible for paying for the damage.

57. Mr O'Conner, upon reading the email, told Plaintiff Campbell that it sounded like a very threatening type email.

58. Plaintiff Campbell went to Clayton Fujii- the assistant superintendent to clear up the false accusations that she scratched the floor very deeply.

59. Defendant Saiki threatened Plaintiff Campbell  if she reported any more harassment to the Superintendent.

60. Defendants Saiki, Jones and  Henderson- the safety director who refused to install adequate lighting around Plaintiff Campbell room or install an alarm system were the males who continually harassed her.

61. Defendant Scofield  started an investigation, never closed it and perpetuated the student behaviors by not supporting Plaintiff Campbell and taking the sides numerous times of volatile and dangerous students.

<u>ADMINISTRATIVE REQUIREMENTS</u>

62. The Plaintiff has filed the instant complaint with the U.S. Equal Employment Opportunity Commission ["EEOC"] and State of Hawaii Civil Rights Commission.

63. In a May 17, 2012 Determination letter the EEOC: "Commissions investigation determined that there is reasonable cause to believe that she was subjected to harassment because of her sex (female) and race (White).  Therefore, I have concluded

that the evidence is sufficient to establish a violation of the above-cited statute." See Exhibit A.

64. In due time after more administrative action, the Plaintiff received Right to Sue letters from both the State of Hawaii Civil Rights Commission and the U.S. EEOC. This Complaint is filed within ninety (90) days of the Plaintiff'S receipt of those letters. The Plaintiff has met all administrative requirements for filing suit.

<u>CAUSES OF ACTION</u>

65. All of the foregoing paragraphs are included by reference in the following Causes of Action, and are incorporated as if fully set forth therein.

CAUSE OF ACTION I
VIOLATION OF TITLE VII

66. The Defendant, State of Hawaii Department of Education ["D.O.E."] as described in Paragraphs 12 to 65 above, violated the Plaintiff'S right to Equal Employment Opportunity under the 1964 Civil Rights Act as amended, on the basis of her female gender, and the right to non-discrimination under Title VII of the Civil Rights Act.

CAUSE OF ACTION II
VIOLATION OF TITLE IX DELIBERATE INDIFFERENCE

67. The Defendant, State of Hawaii Department of Education ["D.O.E."] as described in Paragraphs 12 to 65 above, committed

acts that were unreasonable and either directly caused or were legally insufficient to prevent the repeated denial of equal employment opportunity guaranteed to the Plaintiff under State and Federal laws. The Defendants, though informed, took no action to remedy these violations.

CAUSE OF ACTION III
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, intentionally inflicted emotional distress upon the Plaintiff through the actions described in Paragraphs 12 to 65 above. The Defendants repeatedly harassed the Plaintiff and held her up for public ridicule and embarrassment, and humiliated her. The Defendants' actions were wilfully, wantonly, and maliciously calculated to inflict emotional distress upon the Plaintiff.

CAUSE OF ACTION IV
VIOLATION OF 42 U.S.C. §§ 1981

69. The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, denied the Plaintiff her Constitutional right to employment and promotional opportunities free from racial harassment, abuse, and discrimination. The Defendants consciously violated state and Federal laws and Department of Education fair employment rules, demonstrating deliberate indifference to their legal obligation to protect the Plaintiff'S civil rights. The Defendants

-17-

harassed the Plaintiff due to **her race and then retaliated** against the Plaintiff when she complained of her civil **rights** being violated.   The Defendants engaged in acts of conspiracy conclusive to the facilitation of **employment and promotional** discrimination and tortious breach of contract.   The Defendants engaged in acts to further this conspiracy.

CAUSE OF ACTION V
VIOLATION OF 42 U.S.C. § 1985

70.   The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, conspired to deny the Plaintiff and other qualified teachers the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities from giving the Plaintiff and other qualified teachers equal protection of the laws. The Defendants engaged in acts of conspiracy conclusive to the facilitation of employment and promotional discrimination. Defendants engaged in acts to further this conspiracy.

CAUSE OF ACTION VI
VIOLATION OF 42 U.S.C. § 1986

71.   The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, committed acts or omissions that were conducive to the perpetration of conspiracy to violate the Plaintiff'S civil rights. The Defendants had knowledge of conspiracy to violate the Plaintiff'S civil rights

-18-

and had the power to prevent or aid in preventing the commission of that conspiracy, but neglected or refused to exercise that power.

CAUSE OF ACTION VII
VIOLATION OF 42 U.S.C. § 1983

72.  The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, committed acts or omissions harmful to the Plaintiff, in their capacity as State agents and under color of state law. These acts or omissions violated the Plaintiff'S Constitutional rights.

CAUSE OF ACTION VIII
VIOLATION OF STATE OF HAWAII FAIR EMPLOYMENT ACT

73.  The Defendants, and each of them separately and jointly as described in Paragraphs 12 to 65 above, violated the State of Hawaii Fair Employment Act, Hawaii Revised Statutes ["H.R.S."] Sections 368 and 378 by discriminating against Plaintiff on the basis of sex and retaliation.

CAUSE OF ACTION IX
VIOLATION OF TITLE VII
THE 1964 U.S.A. FAIR EMPLOYMENT ACT
42 U.S.C. § 2000e

74.  The Defendant, State of Hawaii Department of Education ["D.O.E."] as described in Paragraphs 12 to 65 above, violated the Plaintiff'S right to non-discrimination in the application of and for the granting of Plaintiff her  Equal Employment Opportunity fairness rights in employment on the basis of sex.

VIOLATION OF TITLE VII
THE 1964 U.S.A. FAIR EMPLOYMENT ACT
42 U.S.C. § 2000e

74.  The Defendant State of Hawaii Department of Education

["D.O.E."] as described in Paragraphs 12 to 65 above, violated

the Plaintiff'S right to non-discrimination  in employment on the

basis of retaliation.

CAUSE OF ACTION XI
PUNITIVE DAMAGES
79.  The Individual Defendants, and each of them separately

and jointly as described in Paragraphs 12 to 58 above, acted

wilfully, wantonly, oppressively, and with malice that implies a

spirit of mischief or criminal indifference in violating the

Plaintiff'S civil rights. The Defendants are therefore liable for

punitive damages in an amount to be determined at trial for each

cause of action for which punitive damages are assessable.

REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests this Court to

grant the following relief:

(a)  A declaratory judgment be issued that the Plaintiff'S

rights have been violated as alleged above.

(b)  A preliminary and permanent injunction to have the

Defendants desist from the illegal practice of

discrimination, harassment, and retaliation.

(c)  An award to the Plaintiff for compensatory, special,

statutory, liquidated, exemplary, and punitive damages

-20-

and other monetary relief in the amount of
$10,000,000.00, and prejudgment interest entered to the
maximum extent permitted by law.

(d)    An award to the Plaintiff for all costs and attorney'S
fees arising from this litigation.

(e)    Such other and further relief as this Court deems
appropriate.

DATED: Honolulu, Hawaii _____February 18, 2013_____

ANDRE S. WOOTEN
Attorney for Plaintiff
PATRICIA P. CAMPBELL