IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA P. CAMPBELL,<br><br>   Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION, *et al.*<br><br>   Defendants. | CIVIL NO. 13-00083 DKW-RLP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiff Patricia P. Campbell alleges discrimination and retaliation suffered at the hands of her former employer, Defendant State of Hawaii, Department of Education, and various supervisors and co-workers, over the course of several years while employed as a music teacher on the Island of Maui. Because Campbell's damages claims are barred by the State's sovereign immunity, and because her First Amended Complaint fails to state claims against certain defendants in their individual capacity, the Motion for Judgment on the Pleadings is

1

GRANTED.  Campbell is GRANTED leave to file a Second Amended Complaint by July 11, 2014, consistent with this order.

## BACKGROUND

Campbell, a Caucasian female, was employed as a music teacher by Defendant State of Hawaii, Department of Education ("DOE").  In 2003, she taught choir and music full-time at Maui High School, where she alleges that a male student threatened to "hurt her real bad" and broke a door in her presence.  First Amended Complaint ¶ 14.  Campbell reported the threat to the school resource officer and principal, who advised her that if she reported the threat, "she would lose her job."  First Amended Complaint ¶ 15.  Campbell filed a police report anyway, upon finding a journal on her desk inscribed, "Death to Campbell."  First Amended Complaint ¶¶ 16-17.  She claims her report led to her 2004 dismissal, allegedly in favor of a teacher of Hawaiian descent who was not certified and had no prior teaching experience.  First Amended Complaint ¶ 18.  Campbell further claims that she was passed over three times in favor of unqualified male teachers when she applied for music teaching positions on Maui.  First Amended Complaint ¶ 18. After filing a grievance, Campbell received a teaching position at Haiku Elementary School.  First Amended Complaint ¶ 19.

At some point, Campbell was named Music Director at King Kekaulike High School. While there, Campbell alleges that she referred several students to the principal and vice principal's office for discipline, but on most occasions, neither took any action. First Amended Complaint ¶¶ 23-24, 29. Further, she claims that lights outside of her classroom were not fixed by administration, as she requested, and that a vice principal told janitors to paint over threatening graffiti on the music room without telling her the content of the profanity. First Amended Complaint ¶ 25. Campbell alleges that when a student wrote, "Die Bitch Die . . . Death to Campbell" on her car, the vice principal took the side of the student and allowed him to stay on campus. First Amended Complaint ¶ 28.

Campbell also alleges incidents involving the defendant football coach, whom she claims allowed the football team to run through the band's half-time performances. When, as the band director, she complained, the school's administration allowed the coach to take the band to a football game without her. First Amended Complaint ¶¶ 26-27. She claims that a vice principal went into her office without her present, took her grade book, and allowed students to remove instruments. First Amended Complaint ¶ 31. Campbell alleges that the athletic director also undermined her by changing the band's football game seating and instructing players to run onto the field, crashing into the band. First Amended

3

Complaint ¶¶ 41-43.  She claims that the athletic director threatened to have her "killed if she reported any more harassment to the Superintendent."  First Amended Complaint ¶ 51.

After a confrontation with Vice Principal Anthony Jones, in which he allegedly yelled "stop being on the rag . . . and stop ragging on people," Campbell called the police.  She claims that Jones intercepted the police when they arrived on campus and told them that Campbell "has emotional problems."  First Amended Complaint ¶¶ 34-36.  Campbell alleges that she met with then-Superintendent Patricia Hamamoto to present evidence of discrimination and harassment, but Hamamoto refused to consider transferring her to another school.

Campbell filed complaints of discrimination with the Equal Employment Opportunity Commission and Hawaii Civil Rights Commission, and received Right to Sue letters from both.  She then filed the instant suit against the DOE, Hamamoto, Jones, and several administrators and teachers on Maui.  Her First Amended Complaint alleges federal and state employment discrimination claims on the basis of race and gender, retaliation, and civil rights claims under Title IX and 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  Campbell seeks declaratory and injunctive relief, as well as punitive damages.  Defendants seek judgment on the

pleadings with respect to Campbell's federal civil rights causes of action and state law claims.

## STANDARD OF REVIEW

The State brings its motion pursuant to Fed.R.Civ.P. 12(c). That rule states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist*., 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Pursuant to *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

## DISCUSSION

### I. Official Capacity Claims

#### A. Claims for Damages are Barred by the Eleventh Amendment

Under the Eleventh Amendment, a state is immune from certain actions brought in federal court. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Mitchell v. Los Angeles Cmty. Coll. Dist.,* 861 F.2d 198, 201 (9th Cir. 1989). Federal actions against the agencies or instrumentalities of a state are also barred. *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.1986). A suit against state officials in their official capacities is the same as a suit against the state itself and is similarly subject to the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Unless the state unequivocally waives sovereign immunity or Congress exercises its power under the Fourteenth Amendment to

override the immunity, the state, its agencies, and its officials acting in their official capacities are immune from suit under the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1983).

Campbell agrees that the following claims for damages against the DOE and Defendants in their official capacities are barred by the Eleventh Amendment: Count IV for violation of 42 U.S.C. § 1981; Count V for violation of 42 U.S.C. § 1985; Count VI for violation of 42 U.S.C. § 1986; Count VII for violation of 42 U.S.C. § 1983; and Count VIII for violation of HRS Chapters 368 and 378. Accordingly, these claims are dismissed without leave to amend.

**B.** **Claims for Prospective Injunctive Relief**

Unlike her federal civil rights claims for damages, Campbell asserts that the Eleventh Amendment does not bar her federal civil rights claims seeking prospective injunctive relief in the form of reinstatement. *Ex Parte Young*, 209 U.S. 123 (1908). Under the *Ex Parte Young* doctrine, a federal court may enjoin a state official's future conduct when a plaintiff brings suit alleging a violation of federal law. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Seeking injunctive relief, however, is not necessarily sufficient to overcome Eleventh Amendment immunity. *See Han v. U.S. Dep't of Justice*, 45

7

F.3d 333, 338 (9th Cir. 1995). "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred . . . even though styled as something else." *Id.* (citation omitted). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003) (alteration in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

Here, Campbell argues that the reinstatement she seeks is prospective relief "which is ongoing since the Defendant State and officials have not reinstated her to her teaching position." Mem. in Opp. at 5. According to Campbell, the "ongoing violations of Plaintiff's federal rights include not being able to transfer to a band leader position in another Maui school, not being reinstated, [and] violating her civil rights and equal protection, which are stated in her complaint and cause of actions V, VI and VII." *Id.* at 6. These assertions are consistent with the *Miranda B.* "ongoing violation" requirement. If Plaintiff could establish violation of a federal right, the Ninth Circuit has determined that reinstatement is a remedy that is not barred by Eleventh Amendment immunity. *See Doe v. Lawrence Livermore*

8

*Nat'l Lab.*, 131 F.3d 836, 839-842 (9th Cir. 1997); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 871 (9th Cir. 2001) ("[R]einstatement is the sort of prospective injunctive relief for which a state officer can be held liable.").

As discussed below, because the Court grants Campbell leave to amend her federal civil rights claims, she is also granted leave to amend her claims for prospective injunctive relief in the form of reinstatement.

## II. Individual Capacity Claims

### A. Plaintiff's Stipulation to Dismiss

Campbell agrees to dismiss all claims against Defendant Anderson in his individual capacity. She also agrees to dismiss her individual capacity claims against all Defendants under Count IV for violation of 42 U.S.C. § 1981. These claims are dismissed without leave to amend.

### B. Federal Civil Rights Claims (Counts V, VI, VII)

Plaintiff's remaining civil rights claims for violation of Sections 1983, 1985, and 1986 are insufficiently alleged. Plaintiff is granted leave to amend these claims as discussed herein.

#### 1. Section 1983 Claim (Count VII)

Under 42 U.S.C. § 1983,

9

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Here, the First Amended Complaint includes vague references to Campbell's Fourteenth Amendment "Rights to Due Process and Equal Protection," (First Amended Complaint ¶ 68), but fails to present factual details as to the specific conduct of each of the Defendants that allegedly violated these rights. In her opposition, Campbell argues that she complained to Defendants Susan Schofield, Barbara Oura, Anthony Jones, and Kurtis Saiki about violations of her rights to due process and equal protection, but that these "Defendants neglected, or refused to prevent her rights from being violated." Mem. in Opp at 9. These vague allegations do not set forth sufficient factual matter to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, it is unclear which constitutional right is addressed by which allegation, how each allegation amounts to a constitutional violation, and which Defendant is being sued for which alleged constitutional violation. Accordingly,

Campbell fails to state a claim under Section 1983 and Count VII is dismissed with leave to amend.

### 2. Section 1985 and 1986 (Counts V and VI)

Campbell's claims for violation of Sections 1985 and 1986 suffer from the same deficiencies. Section 1985 proscribes conspiracies to interfere with certain civil rights. *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). "[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 930 (9th Cir .2004) (citing *Caldeira v. Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989)). Moreover, there are no factual allegations here detailing how any of the individual Defendants entered into a conspiracy for the purpose of depriving Campbell of a protected right. The First Amended Complaint is devoid of any discussion of an agreement among Defendants to violate her rights. Campbell does not plead factual content that allows the Court to draw a reasonable inference that any Defendant is liable under Section 1985. *Iqbal*, 556 U.S. at 678. Campbell's Section 1985 claim is dismissed with leave to amend.

Section 1986 imposes liability on a person who knows of an impending violation of Section 1985 but neglects or refuses to prevent the violations. *Karim–Panahi*, 839 F.2d at 626. A claim can be stated under section 1986 only if the

complaint contains a valid claim under section 1985. *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990). Because Campbell has failed to allege a valid claim under Section 1985, her claim under Section 1986 is also dismissed with leave to amend.

## C. State Employment Discrimination Claims (Count VIII)

Count VIII alleges that several Defendants in their individual capacities violated HRS Chapter 378 on the basis of sex, race, and retaliation. Section 378-2 provides in pertinent part:

> It shall be an unlawful discriminatory practice:
>
> (1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record . . .
>
> > (A) For an employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
> > . . . .
>
> (2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part;
>
> (3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the

12

discriminatory practices forbidden by this part, or to attempt to do so[.]

Campbell does not identify the subsection or sections of HRS § 378-2 upon which she bases her claim. HRS §§ 378-2(1)(A) and 378-2(2) limit liability to an "employer." In *Lales v. Wholesale Motors Co*, the Hawaiʻi Supreme Court recently held that, "[i]ndividual employees are . . . not liable as 'employers' for harassment and retaliation claims under HRS §§ 378-2(1)(A) and 378-2(2)." *Lales v. Wholesale Motors Co.*, 2014 WL 560829, at *10 (Haw. Feb. 13, 2014). Accordingly, Campbell cannot state a claim against the individual Defendants under Sections 378-2(1) or 378-2(2).

To the extent Campbell attempts to state a claim for violation of Section 378-2(3) for aiding and abetting discrimination, her claim is insufficiently alleged. Nowhere does she mention aiding or abetting, nor do the vague allegations make it clear that she is even alleging such a claim. Campbell states only that multiple Defendants were implicated in her poor treatment by students, staff, and administration, but such behavior falls short of aiding and abetting discrimination. Indeed, Campbell has not alleged that any conduct by any of the individual Defendants led anyone else to also discriminate or partake in unlawful practices against her. Further, the individual Defendants may not be held liable under

13

Section 378-2(3) for any discriminatory behavior they may have conducted themselves, because they "cannot be liable for aiding and abetting [themselves]." *White v. Pac. Media Group*, 322 F. Supp. 1101, 1115 (D. Haw. 2004) (citation omitted). Thus, Campbell does not allege sufficient facts that would establish individual liability under HRS § 378-2(3). Campbell's Count VIII is therefore dismissed with leave to amend.

### III. Punitive Damages

A request for punitive damages is not a stand-alone claim, but is rather derivative of Campbell's other claims. *See Kang v. Harrington*, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action."). Punitive damages may be available as a remedy for violations set forth in other Counts. Count XI for punitive damages is therefore dismissed as a separate cause of action.

### IV. Leave to Amend

The Court grants Campbell leave to file a Second Amended Complaint to address the deficiencies in her claims. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted). Any Second Amended Complaint may not include any new claims or

parties, but must clearly allege the following: (1) the constitutional or statutory right Campbell believes was violated; (2) the name of each defendant who violated that right; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of her rights; and (5) what specific injury she suffered because of that defendant's conduct. *See Rizzo v. Goode,* 423 U.S. 362, 371–72 (1976).

## CONCLUSION

On the basis of the foregoing, the Court GRANTS Defendants' Motion for Judgment on the Pleadings. Should she wish to do so, Campbell is GRANTED leave to file a Second Amended Complaint **on or before July 11, 2014**, in a form consistent with this ruling.

IT IS SO ORDERED.

DATED: June 19, 2014 at Honolulu, Hawai'i,

Derrick K. Watson
United States District Judge

Patricia P. Campbell v. State of Hawaii, Department of Education, *et al.*; Civil No. 13-00083 DKW-RLP; **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**