IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA P. CAMPBELL,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | CIVIL NO. 13-00083 DKW-RLP<br><br>**ORDER GRANTING DEFENDANT STATE OF HAWAII, DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING STATE OF HAWAII, DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT**

On June 19, 2014, the Court granted judgment on the pleadings for Defendant State of Hawaii, Department of Education ("DOE") on several of Campbell's claims. Dkt. No. 76. The DOE now moves for summary judgment on Campbell's remaining claims brought under Title VII and Title IX. Because these remaining claims each fail as a matter of law, summary judgment for the DOE is granted.

## BACKGROUND

The Court set forth the background of this case in its previous order granting judgment on the pleadings, and will not revisit all of those facts here. In short,

Campbell alleges discrimination and retaliation by the DOE, her former employer, over the course of several years while employed as a music teacher on the Island of Maui.

Campbell is a Caucasian female. She was employed by the DOE from 2000 until she resigned in July of 2009. From 2004 to 2007, she taught band and music at Maui High School and King Kekaulike High School ("KKHS") on Maui. While at KKHS, Campbell describes conduct by students that she believes to be discriminatory based on her race and sex:

> The harassment included notes placed on my desk, spray painting "Die bitch Die" around my car, students calling me "fucking haole," "fucking cunt," "fucking bitch," and even "nigga" amongst other derogatory demeaning slurs at school. I was even threatened by a student who told me she had a gun. I took pictures and kept notes of the harassment and complained about the harassment to my supervisors. The harassment occurred from 2004, and continued through 2007.

Decl. of Patricia Campbell ("Campbell Decl.") ¶ 5. Campbell reported these and other incidents of harassment by students to KKHS Principal Scofield, Vice Principals Barbara Oura and Anthony Jones, and DOE Superintendent Patricia Hamamoto. Campbell Decl. ¶ 6. However, Campbell asserts that she was never informed of the outcome of the investigations by school administrators into the students' conduct.

While at KKHS, Campbell also complained about Mr. Saiki, the athletic director, alleging that he "allow[ed] the football team to run through the band

during the Homecoming performance in November 2006 on the football field. Other male bandleaders said this would never happen to them. When I complained about what happened, nothing came from my complaints." Campbell Decl. ¶ 12.

In August 2007, Campbell requested, and was granted, a 12-month leave of absence without pay for health reasons. She was further granted an additional 12-month leave of absence until July of 2009. Decl. of Alvin Shima ("Shima Decl.") ¶¶ 7–8. As a result of this and other conduct, Campbell filed charges of discrimination on February 15, 2008 (amended on February 19, 2008) and November 15, 2010. Campbell Decl. Exs. 3, 4, 5. In her 2008 charge, Campbell asserted discrimination based on race, sex, and retaliation when:

- School administrators did not take "appropriate, corrective action" in response to her complaints about student behavior.
- Principal Scofield did not complete Campbell's work performance evaluation.
- Several students made allegations against Campbell of verbal and physical abuse. As a result of that investigation, Campbell was not placed on paid leave.
- Principal Scofield assigned Campbell an "excessive class schedule."
- The school administration denied Campbell the opportunity to participate in a state championship game.
- At a meeting with Vice-Principal Jones, Jones yelled that Campbell is "always ragging" and "need[s] to stop ragging."
- Campbell was denied a transfer request that she made as a result of the hostile work environment that she felt she was subject to.

Campbell Decl. Exs. 3, 4.

In December of 2009, the DOE sent Campbell a letter, informing her that she was being recommended for termination because her authorized leave without

pay had expired in July 2009, and she had failed to report to work. Shima Decl. Ex. 1 at 16. Campbell then filed a notice of separation, explaining that she felt she was in a hostile work environment, did not feel safe, and would not return to work for health reasons. Shima Decl. Ex. 1 at 15.

In Campbell's 2010 charge of discrimination, she asserted discrimination based on retaliation, alleging that:

> In August 2010, Vanessa Hurst (my then-supervisor) at Thomas Merton Institute (employer) talked with my former principal Susan Scofield at King Kekaulike High School. I have reason to believe Scofield informed Hurst about my protected activity. Subsequently, on September 7, 2010, Hurst discharged me from my position.

Campbell Decl. Ex. 5.

On November 8, 2012, in response to her two charges of discrimination, the EEOC issued Campbell a right to sue letter, which Campbell received on November 27, 2012. Campbell Decl. Ex. 14. Campbell proceeded to file her complaint in this action on February 19, 2013, which she later amended. The amended complaint asserted eleven different counts, one of which was dismissed by Campbell (Dkt. No. 48), and six of which were dismissed by the Court's previous order (Dkt. No. 76). The following counts remain: Title IX sex discrimination (Count 1); Title IX deliberate indifference (Count 2); Title VII race and sex discrimination and hostile work environment (Count 9); and Title VII

retaliation (Count 10). The DOE seeks summary judgment on the remaining four claims.

**STANDARD OF REVIEW**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of its position. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "A party asserting that a fact

cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

**DISCUSSION**

The Court addresses first Campbell's claims under Title VII. Because the analysis under Title VII directs the same result for Campbell's Title IX claims, Campbell's Title IX claims are only briefly addressed beginning at page 18 of this Order.[1]

---

[1]As a threshold matter, the DOE argued in its motion that Campbell failed to bring this lawsuit within 90 days of receiving her notices of right to sue. However, at the hearing, the DOE recognized that the filing of the complaint in this action occurred within 90 days of Campbell's receipt of the notices of right to sue. *See* Campbell Decl. Ex. 14. Accordingly, Campbell's filing of the complaint was timely.

The DOE also argues that Campbell should be precluded from asserting claims for any acts occurring prior to April 25, 2007, *i.e.*, 300 days before the filing of her first charge of discrimination. At the hearing, however, counsel for the DOE conceded that she was not aware of any such limitation for Campbell's Title IX claims. In fact, unlike Title VII discrimination claims, Title IX does not require that plaintiff exhaust administrative remedies before bringing suit in federal court. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 706 n.41 (1979). Further, Title VII hostile work environment claims only require that one of the acts (that is part of the several acts creating a hostile work environment) occur within the 300 days. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."). Accordingly, because all of the alleged acts (including those beyond 300 days prior to the filing of the 2008 charge) are part of Campbell's Title IX claims and her hostile work environment claim, the Court will also consider all of those acts in adjudicating Campbell's Title VII discrimination claims as well.

## I. <u>Title VII Disparate Treatment</u>

The parties agree that the applicable legal framework for deciding Campbell's race and gender discrimination claims is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). Under *McDonnell Douglas*, Campbell must first establish that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802); *accord Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).

If Campbell can establish a prima facie case, the burden of production then shifts to the DOE to articulate a legitimate, nondiscriminatory reason for an adverse employment action. If the DOE satisfies that burden, Campbell "must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

The DOE concedes the first two prongs of the prima facie case, but argues that Campbell's disparate treatment claim fails because she has not shown either of

the last two elements—that is, that she suffered an adverse employment action and that other similarly situated employees (who do not belong to the same protected class) were treated differently. Because the Court agrees with the DOE, Campbell's disparate treatment claim under Title VII fails as a matter of law.

**A. <u>Adverse Employment Action</u>**

Campbell has failed to establish that she suffered an adverse employment action. An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal citations and alteration omitted) (discussing adverse employment action in the context of a plaintiff's claim of "disparate treatment discrimination" under Title VII); *see Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818- 819 (9th Cir. 2002) (plaintiff established a prima facie case of disparate treatment when the employer subjected the plaintiff to adverse employment actions, including verbal and physical abuse, discriminatory overtime, and termination, which all "constituted a material change in the terms and conditions of [the plaintiff's] employment") (internal quotation omitted); *Chuang*, 225 F.3d at 1126 (holding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment" and qualified as an adverse employment action, but also concluding that the employer's

failure to respond to grievances was not an adverse employment action because "it did not materially affect the compensation, terms, conditions, or privileges of the [plaintiff's] employment").

Campbell alleges in her charge of discrimination that the DOE did not take "appropriate, corrective action" in responding to her complaints of harassment by students. Campbell Decl. Ex. 4 ("First Charge of Discrimination") at 1. However, Campbell has provided no evidence to dispute that "[Campbell's] referrals were investigated by the vice principals and students were disciplined when there was evidence of student misconduct." Decl. of Beth Schimmelfennig ("Schimmelfennig Decl.") Ex. 2, at 3. In fact, the DOE provided documentation of the investigations of students (including what discipline, if any, was meted out) referred by Campbell. Schimmelfennig Decl. Ex. 2, at 12–51; Decl. of Anthony Jones ("Jones Decl.") Ex. 2. Nothing indicates that the DOE's response to Campbell's complaints of student conduct was inappropriate or incomplete, and more importantly, the Court concludes that the DOE's response did not materially affect the compensation, terms, conditions, or privileges of Campbell's employment.

Similarly, it was not an adverse employment action for Principal Scofield to send a letter to Campbell containing students' allegations of verbal and physical abuse by Campbell. First Charge of Discrimination at 2. Such a notification was

the obligation of the principal when the allegations by students were made, and this notification itself did not affect the terms or conditions of Campbell's employment. Further, Campbell's complaint that she should have been placed on paid leave pending an investigation of the student's allegations is ironic and unavailing. By not being placed on leave pending an investigation, Campbell was in fact allowed to work as usual, without any change in the terms and conditions of her employment. Ultimately, the investigation into the students' allegations against Campbell resulted in a finding that she had engaged in some inappropriate behavior. The DOE, however, opted not to take any action against Campbell, in spite of the findings of the investigation, which Campbell does not dispute.[2] Schimmelfennig Decl. Ex. 2, at 4. Thus, there was no material change to the terms or conditions of Campbell's employment as a result of the complaints by students and the subsequent investigation.

Campbell also asserts that she suffered an adverse employment action when she was assigned what she terms an "excessive class schedule" in 2006. First Charge of Discrimination at 2. But Campbell provides no evidence to suggest her schedule was excessive relative to any other teacher (much less any similarly situated teacher). Indeed, the DOE's evidence shows the contrary. Decl. of Susan

---

[2]Nor was the investigation itself an adverse employment action. The DOE's Civil Rights Compliance Office was obligated to investigate the allegations by students and parents of Campbell's inappropriate conduct.

Scofield ("Scofield Decl.") ¶ 22. There was thus nothing adverse about Campbell's schedule.

There was also nothing materially adverse about many other incidents alleged by Campbell. For example, Campbell complains that she was "denied . . . the opportunity to attend a State Championship Game to direct the school band." First Charge of Discrimination at 2. This isolated incident, even if true, did not materially alter the terms and conditions of Campbell's employment. Additionally, Campbell's inability to obtain a transfer in 2007 was also not an adverse employment action. Campbell does not rebut the DOE's evidence that Campbell simply failed to follow established DOE transfer request procedures. Decl. of Robyn Honda ("Honda Decl.") ¶¶ 5–9. Campbell cannot assert that the denial of an improper transfer request (that was improper by Campbell's own fault) would somehow be an adverse employment action here. Further, the fact that the DOE misplaced a copy of Campbell's 2006 evaluation is not an adverse action, as it did not alter the terms and conditions of her employment in any material way.

In sum, because numerous employment actions cited by Campbell were not "adverse" within the meaning of *McDonnell Douglas*, Campbell has failed to establish the third prong of a prima facie case for disparate treatment.

### B. Similarly Situated Employees

Even if Campbell could satisfy the adversity requirement, she has also failed to establish the final prong of a prima facie case because she has not provided sufficient evidence that similarly situated employees were treated differently. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). Campbell's only evidence regarding the treatment of similarly situated employees consists of newspaper articles about some teachers being placed on paid leave pending investigations, Campbell Decl. Exs. 19, 26, and a statement by another KKHS teacher that:

> With other Asian male band leaders [such] as ______ Mitchell, and Casey Nagata, the administration at KKHS (Scofield, Jones, and Oura) supported them by allowing them unusual scheduling preferences and conditions including purchase order authorization. This was very different from their treatment towards Patricia Campbell.

Decl. of Rob Harper ("Harper Decl.") ¶ 7. This scant evidence simply fails to even approach a showing that these employees were "similar in all material respects." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010); *accord Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1997). The Court has no evidence suggesting who similarly situated individuals outside of Campbell's protected class may be, let alone how they might have been treated differently.

Accordingly, because Campbell fails to establish either the third or fourth elements of a prima facie claim for disparate treatment, the DOE is entitled to summary judgment on that claim.

## II. <u>Title VII Hostile Work Environment</u>

Campbell's Title VII hostile work environment claim also fails as a matter of law. "To prevail on a hostile work environment sexual harassment claim, the plaintiff must show that her work environment was both subjectively and objectively hostile . . . . The plaintiff also must prove that any harassment took place because of sex."[3] *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (internal citations and quotation marks omitted).

While the DOE contends that Campbell was not subject to words or conduct of a sexual nature, the Court disagrees. Several of the student incidents complained of by Campbell involved words or conduct of a sexual nature or that were directed at Campbell's race or gender. *See, e.g.*, Campbell Decl. ¶ 5, and Exs. 6 and 7 thereto. Thus, the Court finds that the first two elements of

---

[3]The specific elements of a Title VII hostile work environment sexual harassment claim are that:

> (1) [plaintiff] was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)).

Campbell's hostile work environment claim are satisfied—that is, she was subjected to conduct because of her race and gender, and it was unwelcome. However, Campbell's claim fails because the conduct was not sufficiently severe or pervasive to alter the conditions of her employment.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment Title VII is violated." *Harris v. Forklift Syst., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). The working environment must be perceived as both subjectively and objectively abusive. *Id*. at 20–21. In addition, the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). When considering the existence of a hostile work environment, the Court must view the totality of the circumstances. *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).

When viewing these circumstances in the light most favorable to Campbell, however, there is no indication of a workplace permeated with discriminatory intimidation. The conduct cited by Campbell in support of her hostile work environment claim originated from students, not DOE administrators, teachers, or employees. High school teachers are frequently subjected to offensive language and a certain level of insubordination from students. In consideration of that

reality, the student behavior that Campbell complained of simply does not rise to the level of a hostile work environment, particularly given that the comments of a racial or sexual nature made up only a handful of incidents over the span of the several years that Campbell was teaching. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citations and quotation marks omitted).

Moreover, as discussed above, the evidence indicates that Campbell's complaints were addressed properly, and she was not mistreated. Other than the student incidents directed towards Campbell, the only other cited incident allegedly based on gender was the admitted comment by Vice-Principal Jones that Campbell should stop "ragging." However, there is no question of fact that this comment was not of a sexual nature. The DOE's Civil Rights Compliance Office thoroughly investigated this incident and concluded that:

> [T]here is insufficient evidence to show that Jones intended to sexually harass Campbell, or make her feel like she was being sexually harassed by using the word "rag" in the summary of conference document. In addition, it was not his intention to use the word "ragged" in the summary of conference, he meant to use the word "raged." Jones asserts that there was no sexual connotation intended when the students described Campbell's scolding, as "ragging" at them. According to the Merriam Webster's Collegiate Dictionary, the word "rag" is defined as: "transitive verb ragged/ragging (1739) 1: to rail at: SCOLD." This definition shows that the word "ragging" was used appropriately in the summary of conference document.

Schimmelfennig Decl. Ex. 2, at 68. The Court adopts this same reasoning to determine that Jones's comments were not directed towards Campbell's gender and thus are not even considered in determining a hostile work environment.

Based on the totality of the circumstances, the evidence does not indicate a discriminatory work environment that was so severe and pervasive to alter the conditions of Campbell's work. As such, she fails to establish her hostile work environment claim under Title VII, and the DOE is entitled to judgment as a matter of law on this claim.[4]

## III. Title VII Retaliation

Campbell's final Title VII claim for retaliation also fails as a matter of law. Under Title VII, "[t]o make out a prima facie retaliation case, [an employee] ha[s] to show [(1)] that she engaged in protected activity, [(2)] that she suffered a materially adverse action, and [(3)] that there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 423 (9th Cir. 2013). Just as Campbell was unable to establish that she suffered an adverse employment action for her disparate treatment claim, she has not provided evidence of a materially adverse action to support her retaliation claim.

[4]In light of the Court's conclusion that Campbell has not established her hostile work environment claim, the Court also grants summary judgment for the DOE on Campbell's claim of constructive discharge. "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks v. San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).

In the context of a retaliation claim under Title VII, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243. Just as the Court concluded in the previous section that Campbell was not subject to any conduct material impacting the terms and conditions of her employment, none of those same acts would be reasonably likely to deter an employee from engaging in protected activity. In her second charge of discrimination, Campbell alleges one additional adverse act to support her retaliation claim–namely that Principal Scofield spoke to Campbell's new supervisor and that Campbell was later discharged from her new position as a result. Campbell Decl. Ex. 5. However, the DOE proffered evidence that Scofield never spoke to Campbell's supervisor, Scofield Decl. ¶¶ 23–24, and Campbell has not rebutted this with any evidence of her own, instead relying solely on the allegations in the charge of discrimination. This does not satisfy Campbell's burden of production at summary judgment. Accordingly, Campbell's claim for retaliation cannot stand as there is no evidence establishing an adverse action.

In sum, the DOE is entitled to judgment as a matter of law on all of Campbell's Title VII claims. The Court now turns to the Title IX claims, which similarly fail as a matter of law.

## IV. <u>Title IX Sex Discrimination and Deliberate Indifference</u>

The two key elements of a sex discrimination claim under Title IX are: (1) that a person must be excluded from participation in, denied the benefits of, or be subjected to discrimination under any education program; and (2) that such action was taken on the basis of the person's sex. 20 U.S.C. § 1681(a). In determining the first of these elements, the parties do not dispute that the Court must engage in the same analysis of discrimination that it did for Campbell's Title VII disparate treatment claim. *Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1421 (N.D. Cal. 1996) ("The appropriateness of using Title VII substantive standards in Title IX employment cases is by now well-established."); *Johnson v. Baptist Medical Center*, 97 F.3d 1070, 1072 (8th Cir. 1996) ("[W]hen a plaintiff complains of discrimination with regard to conditions of employment . . . , the method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case."). Consequently, for the same reasons that Campbell's discrimination claim under Title VII fails as a matter of law, Campbell's Title IX sex discrimination claims also fails.

Finally, Campbell's deliberate indifference claim under Title IX fails because the DOE's response to all of Campbell's complaints was reasonable and within proper procedure. "'[D]eliberate indifference' occurs 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in

light of the known circumstances.'" *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

Campbell's argument for deliberate indifference focuses on the DOE's response to the conduct of students that she reported to KKHS administration, as well as the specific "ragging" comment from Vice Principal Jones. As determined by the Court in the prior sections, the DOE's response to all of Campbell's referrals of improper student conduct was both thorough and reasonable. Investigations were properly conducted and appropriate discipline was taken.[5] Schimmelfennig Decl. Ex. 2, at 3, 12–51; Jones Decl. Ex. 2. If there is evidence otherwise, Campbell did not offer any. Moreover, the "ragging" comment was not an incident of harassment. Vice Principal Jones was the subject of a thorough investigation by the DOE's Civil Rights Compliance Office over allegations made by Campbell, including the "ragging" comment. The fact that Campbell disagrees with the conclusions of that investigation does not mean that such an investigation was unreasonable. To the contrary, the Court concludes that the DOE took reasonable, appropriate action in response to Campbell's complaints and referrals.

[5] Whether Campbell was privy at the time to the outcomes of all of the investigations has no bearing on whether the DOE's response to her referrals was reasonable for purposes of determining deliberate indifference. The extent to which Campbell was informed at the time of the investigations is therefore of no consequence here.

In short, there is no evidence of deliberate indifference by the DOE, and the DOE is consequently entitled to judgment as a matter of law on all of Campbell's Title IX claims.

**CONCLUSION**

The Court hereby grants the DOE's motion for summary judgment (Dkt. No. 79) on all of Campbell's remaining claims. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: April 10, 2015 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

Patricia P. Campbell v. State of Hawaii, Department of Education, et al.; CV 13-00083 DKW-RLP; ORDER GRANTING STATE OF HAWAII, DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT